Bessie T. MORRIS, Appellant,

v.

Nannie Rose SPARROW et al., Appellees.

Court of Appeals of Kentucky.

Oct. 30, 1970.

Rehearing Denied Dec. 18, 1970.

Bessie T. Morris, pro se.

Ollie J. Bowen, Lawrenceburg, for appellees.

PALMORE, Judge.

This litigation is a family dispute which mainly concerns the title to a tract or tracts of land in Anderson County upon which the late H. E. (Everett) Dadisman had lived for more than 50 years at the time of his death in 1966. He died intestate, unmarried, and without issue.

Everett's father, H. G. (Green) Dadisman, was first married to Matilda (Tillie) Edrington, by whom he had two children, Everett and Elizabeth. Elizabeth married a man named Morris and had one child, Bessie T. Morris, who is the appellant in this proceeding.

Tillie Edrington Dadisman died in 1881, after which her surviving husband, Green Dadisman, married Kate Tinsley. They had two children who lived to maturity, Ora A. Breckenridge and Nannie Rose Sparrow. Both Ora and Nannie were plaintiffs in this action, but Ora died during its pendency and her interest is now represented by Nannie, her sole devisee.

Green Dadisman having predeceased Everett, Everett's heirs at law consisted of his niece, Bessie Morris, and his half sisters, Ora Breckenridge and Nannie Rose Sparrow. Bessie contends that be-

cause her mother was a sister of the full blood the half sisters do not inherit, but we must disagree.

KRS 391.010 provides that if there be no surviving children or parents the decedent's real estate shall descend to his brothers and sisters and their descendants. KRS 391.050 provides that collaterals of the half blood shall inherit "half as much as those of the whole blood, or as the ascending kindred, *when they take with either.*" (Emphasis added.) The statement in Ryburn v. First National Bank of Mayfield, Ky., 399 S.W.2d 313, 315 (1965), "that before any succeeding class of heirs may take all those in the preceding classes must be dead, and so long as there is a living member of a class no member of a succeeding class can take in his stead," is inapplicable, because brothers and sisters of the half blood are members not of a succeeding class, but of the same class as the full brothers or sisters. Otherwise they could never take *with* the full brothers or sisters, and KRS 391.050 would be meaningless. In fact, it may well be that if it were not for KRS 391.050 kinsmen of the half blood would share equally with those of the full blood. "In the absence of such a statute, the half blood is usually held to take equally with the whole blood, such rule being based, either on the intent of the legislature as gathered from the other sections of the statutes of descent, or on the theory that the common-law rule was founded on the feudal law and is not applicable to our institutions." Annotation, Rights of inheritance in ancestral property as between kindred of whole and half blood, 141 A.L.R. 976, 977 (1942).

Returning now to a statement of the facts necessary to an understanding and resolution of the appellant's other contentions, we find from the record that the land in question, described as a tract containing 56 acres, was conveyed to Everett Dadisman by a deed from Green Dadisman dated May 3, 1912, and duly recorded in 1915. This deed recites that the property had been conveyed to Green Dadisman by a

deed from James Sparrow recorded in Deed Book 6, page 450 (Anderson County Court Clerk's office). In 1916 Everett reconveyed the same tract to Green. In 1917 Green conveyed it to Ora Breckenridge.

■ By two deeds executed and acknowledged before a deputy clerk of the Jefferson County Court Clerk in 1918 Ora Breckenridge and her husband conveyed 25 acres of the land in question to Green Dadisman and 35 acres to Everett Dadisman. (Regardless of the discrepancy in acreage, the two tracts comprise the whole 56 acres mentioned in the earlier deeds.) These two deeds were not recorded in the office of the Anderson County Court Clerk until 1938, and we gather that Bessie claims they were fraudulent. If they were, it is obvious that Ora Breckenridge was the only party in this proceeding in a position to complain. Her appearance as a plaintiff in this action, alleging that Green and Everett were at their deaths the owners of the land by virtue of the 1918 conveyances, certainly constituted a ratification of the deeds and a negation of any fraud allegedly practiced against her.

Anyway, to go on with the facts, Green died testate in 1935 and left his entire estate to Everett subject to an executory limitation in fee to Herman Sparrow (Nannie's son) in the event Everett should die without issue, which, of course, he did. Herman Sparrow was one of the plaintiffs in this proceeding but is now deceased, and his successors in interest have been substituted as appellees. CR 25.

■ Thus it may be seen that according to the records of the Anderson County Court Clerk the 35-acre tract descended to Everett's heirs at law and the 25-acre tract vested in Herman Sparrow. In brief, that is what the judgment in this litigation determined.

Bessie has represented herself throughout this proceeding and has done as resourceful a job as could be expected on the part of a layman without competent legal advice. We shall do the best we can to set forth her various remaining theories and explain why they are unavailing.

■ She says that Green Dadisman was incompetent and unable to make a valid will. In fact, Ora Breckenridge herself contested the will. Nevertheless, it was admitted to probate in 1935 and has never been set aside. Even if it could be collaterally attacked in this proceeding, the attack would be barred by limitations, which defense was pleaded in the plaintiffs' reply. Cf. KRS 394.240, 413.160.

■ She says that Everett Dadisman adversely possessed the land (including the 25 acres which purportedly had been conveyed to Green Dadisman) for 50 years or more as her tenant, but there is no competent evidence in the record to justify a finding to the effect that he was holding under and for her. Nor is there any substantial evidence that during the lifetime of Green, who also resided on the property, Everett was claiming the 25 acres adversely to Green. As to his possession under claim of exclusive ownership in himself after Green's death, that of course would not have been inconsistent with the executory devise in favor of Herman Sparrow, because Everett was in fact the fee owner until his title was defeated by his death without issue.

■ She says in substance that the property was never owned by Green Dadisman in the first place, that it was her mother's, and that the 1912 conveyance from Green to Everett and the subsequent "shuffling of invalid deeds" was an illicit attempt to becloud the true title, which had descended to Tillie's heirs. This contention, however, was not embraced within her pleadings. To the contrary, her amended answer expressly alleged that Everett was the owner of the property by virtue of the 1912 conveyance from Green.

She says that when the state highway department condemned a part of the property in 1929 the title of Green Dadisman

was not recognized, and the special commissioner's conveyance ran from Everett Dadisman and Ora Breckenridge rather than from Everett and Green. But as we have already pointed out, if the 1918 deed from Ora to Green was not valid it was up to Ora to say so. In any event, it would be of no help to Bessie to say now that Ora was the owner of the 25 acres.

We have examined this record carefully and do not find any reversible error.

The judgment is affirmed.

All concur.